# COMPOSITE EXHIBIT "A"

 **PNC BANK**

**Business Loan**

## Application

| SMALL BUSINESS LINE OF CREDIT OR SBA EXPRESS SMALL BUSINESS LINE OF CREDIT | | |
|---|---|---|
| [ ] Check here if this is for an increase to an existing Small Business Line of Credit | | |
| Loan Amount: $100,000.00 | Business Loan Purpose: Working Capital (Not Business Credit) | |
| **Loan Payment Authorization** (Automatic Payment is required. If you have an existing PNC Bank Business Checking Account, provide the following information) | | |
| PNC Bank Business Account Number: ████3922 | Name on Account: GLOBALMAX LLC | [X] I request that this line of credit be used as overdraft protection for my PNC Bank Business Checking Account (**optional**)* |

**\* Certain lines of credit may not be used as, and certain accounts may not be eligible for, overdraft protection.  PNC may in its sole discretion decline to offer overdraft protection at any time.**

## BORROWER INFORMATION:

### LEGAL BUSINESS ENTITIES (required for Legal Business Entities)

| | | | |
|---|---|---|---|
| Entity Type:<br>Limited Liability Company | | | |
| Business Legal Name (should match Secretary of State Filing/Good Standing Certificate):<br>GLOBALMAX LLC | | | Tax Identification Number:<br>██████7765 |

| Business Address (no P.O. Boxes) | City | State | Zip Code: |
|---|---|---|---|
| 13118 RUSHTONE CT | ORLANDO | Florida | 32832-6993 |
| Mailing Address (if different from above) | City | State | Zip Code: |

## AGREEMENTS

1. **Applicant**. The Applicant certifies that the statements made on this application (this "**Application**") and any other information provided in connection with this Application are true and complete. **THE APPLICANT CERTIFIES THAT ALL LOAN PROCEEDS WILL BE USED FOR BUSINESS PURPOSES.** The term "**Applicant**" means the individual or entity(ies) applying for the business Credit Facility (as defined below) (individually and collectively, if more than one, the "**Borrower**") and all other persons who by providing information herein may be liable for the Credit Facility (as defined below) requested in this Application as an endorser, surety, guarantor or who may be a principal of the Borrower. The Applicant agrees to promptly notify the Bank of any material changes to this information. If one or more of the Borrowers is a business entity, the Borrower agrees, that, if required, it shall provide certification(s) of beneficial owners in form and substance acceptable to the Bank (as executed and delivered to the Bank on or prior to the date of this Application and updated from time to time, the "**Certification of Beneficial Owner(s)**"). If the Borrower is or was required to execute and deliver to the Bank a Certification of Beneficial Owner(s), the Borrower represents and warrants, as of the date of this Application and as of the date each updated Certification of Beneficial Owners is provided to the Bank, that the information in the Certification of Beneficial Owners is true, complete and correct and the Borrower agrees to provide confirmation of the accuracy of the information set forth in the Certification of Beneficial Owners, or deliver a new Certification of Beneficial Owners as and when requested by the Bank and/or when any individual identified on the most recent Certification of Beneficial Owners as a controlling party and/or a direct or indirect individual owner has changed. The Applicant further agrees to provide such other information and documentation as may reasonably be requested by the Bank from time to time for purposes of compliance by the Bank with applicable laws (including without limitation the USA Patriot Act and other "know your customer" and anti-money laundering rules and regulations), and any policy or procedure implemented by the Bank to comply therewith. The Bank is requested and authorized to make all inquiries it deems necessary to verify accuracy of the information submitted and to determine the Applicant's creditworthiness, and to share any information (including personal information) provided to the Bank by or about any Applicant(s) with any third party (including national credit bureaus) that performs services for the Bank in connection with this Application or a Credit Facility (as defined below) or to whom this Application or any credit facility to the Borrower or any other Applicant may be transferred. The Applicant hereby requests and authorizes any person or consumer or business reporting agency to give the Bank or such third party any information it may have on the Applicant and authorizes the Bank or such third party to make inquiries of the Applicant's accountant directly and obtain any information it deems necessary in processing this Application. The Applicant authorizes the Bank and any transferee of this Application or Credit Facility (as defined below) to answer any questions about its credit experience with the Applicant. The Applicant understands that all fees, including commitment and documentation fees and annual credit review fees are non-refundable. In addition, the Borrower will pay all expenses, including but not limited to: documentation fees, annual fees, mortgage taxes, insurance premiums, recording and filing fees, appraisal fees, etc. associated with a Credit Facility (as defined below).

**By signing below, each Applicant, who is either the Borrower, a principal of the Borrower, or an individual guarantor(s) of its obligations hereby requests and provides written authorization to the Bank or its designee (and any assignee or potential assignee hereof) to obtain a personal credit profile from one or more national credit bureaus. Such authorization shall extend to obtaining a credit profile (i) in considering this Application, (ii) assessing creditworthiness and (iii) considering extensions of credit, including on an ongoing basis, as necessary for the purpose of (a) update, renewal, modification or extension of such credit or additional credit, (b) reviewing or collecting any resulting account and (c) reporting on the repayment and satisfaction of such credit obligations. A photocopy or facsimile copy of this authorization shall be valid as the original. By signing below, I/we further affirm and ratify our prior requests and authorizations provided with respect to the matters set forth herein. By signature below, each Applicant affirms the Applicant's identity as the respective individual identified in this Application.**

2. **Terms and Conditions; Certain Agreements by Borrower**. If the Bank approves this Application, the Bank may, at its sole discretion, approve an unsecured small business line of credit or a credit facility under the U.S. Small Business Administration's Express Loan program (an "**SBA Express Loan**") (the "**Credit Facility**"). If the Bank approves this Application, the Bank will mail to the Borrower at the address specified for such party in this Application, the additional terms and conditions that will govern the Credit Facility (as amended or restated from time to time, the "**Terms and Conditions**"). The Borrower agrees that: (i) it shall be bound by all applicable provisions of the Terms and Conditions; (ii) all credit requested or obtained under the Credit Facility shall be subject to the Terms and Conditions; (iii) any request by the Borrower for credit under any Credit Facility shall be conclusive evidence that the Borrower has received and agreed to the Terms and Conditions; (iv) the Credit Facility will be disbursed and fees will be paid in accordance with the Loan Disbursement and Fee Collection Authorization attached to this Application; and (v) it shall pay or perform all

loans, advances, debts, liabilities, obligations, covenants and duties owing to the Bank, of any kind or nature, present or future (including any interest accruing thereon after maturity, or after the filing of any petition in bankruptcy, or the commencement of any insolvency, reorganization or like proceeding relating to the Borrower or such grantor, whether or not a claim for post-filing or post-petition interest is allowed in such proceeding) whether direct or indirect (including those acquired by assignment or participation), absolute or contingent, joint or several, due or to become due, now existing or hereafter arising (all such responsibilities and obligations are collectively referred as the "**Obligations**"). The Borrower agrees: (A) to immediately notify the Bank if it does not receive the Terms and Conditions within thirty (30) days after the date that the Borrower signed this Application as set forth below, and (B) to notify the Bank within five (5) business days (the "**Objection Period**") of receipt of the Terms and Conditions if the Borrower objects to being bound by the Terms and Conditions. If the Borrower so objects, the Borrower shall repay to the Bank, within the Objection Period, any proceeds of the Credit Facility which have been disbursed to, or on behalf of, the Borrower. If the Borrower does not object to the Terms and Conditions and repay any amounts owed to the Bank within the Objection Period, or otherwise uses or accepts any of the proceeds of the Credit Facility, the Borrower shall be deemed to have accepted and be bound by the Terms and Conditions. If the Credit Facility is an SBA Express Loan, when SBA is the holder, this Application and note will be interpreted and enforced under federal law, including SBA regulations. The Bank or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Application and note, Borrower may not claim or assert any local or state law against SBA to deny any obligation, defeat any claims of SBA, or preempt federal law.

3. **Guaranty**. This paragraph applies only to persons or business entities signing as "Personal Guarantors" or "Entity Guarantors". In consideration of the extension of credit from the Bank to the Borrower and other good and valuable consideration, each of the undersigned persons or business entities (individually, a "**Guarantor**" and collectively, the "**Guarantors**") hereby jointly and severally guarantees, and becomes surety for the Obligations. This guaranty is absolute, unconditional, irrevocable and continuing and will remain in full force and effect until all of the Obligations have been paid in full. This guaranty will not be affected by: any release by the Bank of any other party, guaranty or security held by it for any of the Obligations; any failure of the Bank to preserve its rights to any guaranty; or any irregularity, unenforceability or invalidity of any of the Obligations or any part thereof or any guaranty thereof. This is a guaranty of payment and not of collection and the Bank shall not be required, as a condition of any Guarantor's liability, to make any demand upon or to first pursue any of its rights against any Borrower or particular Guarantor, or to pursue any rights which may be available to it with respect to any other person who may be liable for the payment of the Obligations. Each Guarantor hereby waives: notice of acceptance of this guaranty, notice of extensions of credit to the Borrower from time to time, notice of default, diligence, presentment, notice of dishonor, protest, or demand for payment. The Bank at any time and from time to time, without notice to or the consent of any Guarantor, and without impairing or releasing, discharging or modifying any Guarantor's liabilities hereunder, may: (a) change any of the Terms and Conditions relating to any of the Obligations; (b) renew, substitute, modify, amend or alter, or grant consents or waivers relating to, any of the Obligations, any other guaranties or any security for any Obligations; (c) apply any and all payments by whomever paid or however realized, to any Obligations of the Borrower in such order, manner and amount as the Bank may determine in its sole discretion; (d) deal with any other person with respect to any Obligations in such manner as the Bank deems appropriate in its sole discretion; (e) substitute, exchange or release any security or guaranty; or (f) take such actions and exercise such remedies as provided herein or any of the Terms and Conditions. Until the Obligations are paid in full, each Guarantor postpones and subordinates in favor of the Bank any and all rights, which such Guarantor may have to assert any claim against any Borrower or to any realization on any property of any Borrower. Each Guarantor's obligations hereunder shall not be affected, modified or impaired by any counterclaim, set-off, recoupment, deduction or defense based upon any claim such Guarantor may have against any Borrower or other Guarantor or the Bank except payment of the Obligations. To the extent that the Bank incurs any costs or expenses in protecting or enforcing its rights under the Obligations or this guaranty, including reasonable attorneys' fees and the costs and expenses of litigation, such costs and expenses will be due on demand, will be included in the Obligations, and will bear interest from the incurring or payment thereof in accordance with the Terms and Conditions. If the Credit Facility is an SBA Express Loan, when SBA is the holder, the Application, note and this guaranty will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use State or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Application and guaranty, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claims of SBA, or preempt federal law. This guaranty will be binding upon and inure to the benefit of each Guarantor and the Bank and their respective heirs, executors, administrators, successors and assigns.

4. **Information Sharing**. Each Applicant understands that in order to serve our customers efficiently and offer a full range of financial services, the Bank shares customer transaction and experience information among the PNC Bank family of companies. PNC Bank companies also share personal information such as applications, financial statements and credit reports. By executing this Application, each Applicant expressly consents to the sharing of such information among PNC Bank companies unless such Applicant requests that the Bank not share this other personal information (except where such information is used by one PNC Bank company to service customer accounts for another) by calling the Bank at 1-877-BUS-BNKG (1-877-287-2654) or by writing to the Bank at: PNC Bank, P.O. Box 96066, Pittsburgh, Pennsylvania 15226 including the Applicant's name, address and account number(s) or Social Security/EIN number(s).

5. **Right of Setoff**.  In addition to all liens upon and rights of setoff against the money, securities or other property of any Borrower or Guarantor given to the Bank by law, the Bank shall have, with respect to all Obligations and to the extent permitted by law, a contractual possessory security interest in and a contractual right of setoff against, and each Borrower and Guarantor hereby assigns, conveys, delivers, pledges and transfers to the Bank, all of its right, title and interest in and to, all deposits, moneys, securities and other property now or hereafter in the possession of or on deposit with, or in transit to, the Bank whether held in a general or special account or deposit, whether held jointly with someone else, or whether held for safekeeping or otherwise, excluding, however, all IRA, Keogh, and trust accounts.  Every such security interest and right of setoff may be exercised without demand or notice.  Every such right of setoff shall be deemed to have been exercised immediately upon the occurrence of a default without any action of the Bank, although the Bank may enter such setoff on its books and records at a later time.

6. **Dispute Resolution.**

(a) **WAIVER OF JURY TRIAL. FOR ANY DISPUTE THAT IS NOT ARBITRATED, AND TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE BORROWER, EACH GUARANTOR,  EACH GRANTOR AND THE BANK IRREVOCABLY WAIVES ANY AND ALL RIGHT SUCH BORROWER, GUARANTOR,  GRANTOR OR BANK MAY HAVE TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR CLAIM OF ANY NATURE RELATING TO THIS INSTRUMENT, ANY DOCUMENTS EXECUTED IN CONNECTION WITH THIS INSTRUMENT OR ANY TRANSACTION CONTEMPLATED IN ANY OF SUCH DOCUMENTS.  THE BORROWER, EACH GUARANTOR AND EACH GRANTOR ACKNOWLEDGES THAT THE FOREGOING WAIVER IS KNOWING AND VOLUNTARY AND IS A MATERIAL INDUCEMENT FOR THE PARTIES ENTERING INTO THIS TRANSACTION.**

(b) **ARBITRATION OF DISPUTES**.  The Borrower, each Guarantor, each Grantor or the Bank may elect  to submit any and all disputes arising out of or relating to this instrument, any documents executed in connection with this instrument, or any transaction contemplated in any of such documents, or any breach thereof (a "**Dispute**") to binding arbitration

(i) Arbitration.  Any arbitration shall be conducted pursuant to and in accordance with the AAA Commercial Arbitration Rules and, where applicable, the Supplementary Rules for Large, Complex Commercial Disputes, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction.  Such arbitration shall be conducted in a mutually acceptable location.  Except as expressly set forth below, the procedures specified herein shall be the sole and exclusive procedures for the resolution of Disputes; provided, however, that the Borrower, each Guarantor, each Grantor or the Bank may seek provisional or ancillary remedies, such as preliminary injunctive relief, from a court having jurisdiction, before, during or after the pendency of any arbitration proceeding.  The institution and maintenance of any action for such judicial relief, or pursuit of provisional or ancillary remedies, shall not constitute a waiver of the right or obligation of any party to submit any claim or dispute to arbitration.  Nothing herein shall in any way limit or modify any remedies available to the Bank under this instrument, any documents executed in connection with this instrument, or any transaction contemplated in any of such documents or otherwise at law or in equity.

(ii) Motion Practice.  In any arbitration hereunder, the arbitrator(s) shall decide any pre-hearing motions which are substantially similar to pre-hearing motions to dismiss for failure to state a claim or motions for summary adjudication.

(iii) Discovery.  Discovery shall be limited to the pre-hearing exchange of all documents which the Borrower, each Guarantor, each Grantor, as applicable, and the Bank intend to introduce at the hearing and any expert reports prepared by any expert who will testify at the hearing.

(iv) Sequential Hearing Days.  At the administrative conference conducted by the AAA, the Borrower, each Guarantor, each Grantor, as applicable, and the Bank and the AAA shall determine how to ensure that the hearing is started and completed on sequential hearing days.  Potential arbitrators shall be informed of the anticipated length of the hearing and they shall not be subject to appointment unless they agree to abide by the parties' intent that, absent exigent circumstances, the hearing shall be conducted on sequential days.

(v) Award.  The award of the arbitrator(s) shall be accompanied by a statement of the reasons upon which such award is based.

(vi) Fees and Expenses.  The Borrower, each Guarantor, each Grantor, as applicable, and the Bank shall each bear equally all fees and costs and expenses of the arbitration, and each  shall bear its own legal fees and expenses and the costs of its experts and witnesses; provided, however, that if the arbitration panel shall award to a party substantially all relief sought by such party, then, notwithstanding any applicable governing law provisions, the other party shall pay all costs, fees and expenses incurred by the prevailing party and such costs, fees and expenses shall be included in such award.

(vii) Confidentiality of Disputes. The entire procedure shall be confidential and none of the parties nor arbitrator(s) may disclose the existence, content, or results of any arbitration hereunder without the written consent of all parties to the Dispute, except (i) to the extent disclosure is required to enforce any applicable arbitration award or may otherwise be required by law and (ii) that either party may make such disclosures to its regulators, auditors, accountants, attorneys and insurance representatives.  No conduct, statements, promises, offers, views, or opinions of any party involved in an arbitration hereunder shall be discoverable or admissible for any purposes in litigation or other proceedings involving the parties to the Dispute and shall not be disclosed to anyone not an agent, employee, expert, witness, or representative for any of such parties.

(viii)     **CLASS ACTION WAIVER.  THE BORROWER, EACH GUARANTOR AND EACH GRANTOR HEREBY WAIVES, WITH RESPECT TO ANY DISPUTE: (I) THE RIGHT TO PARTICIPATE IN A CLASS ACTION, PRIVATE ATTORNEY GENERAL ACTION OR OTHER REPRESENTATIVE ACTION IN COURT OR IN ARBITRATION, EITHER AS A CLASS REPRESENTATIVE OR CLASS MEMBER; AND (II) THE RIGHT TO JOIN OR CONSOLIDATE CLAIMS WITH CLAIMS OF ANY OTHER PERSON.**  The foregoing waiver is referred to herein as the "**class action waiver**".  The Bank, the Borrower, each Guarantor and each Grantor agree that no arbitrator shall have authority to conduct any arbitration in violation of the class action waiver or to issue any relief that applies to any person or entity other than the Borrower, each Guarantor, each Grantor and/or the Bank individually.  The parties acknowledge that this class action waiver is material and essential to the arbitration of any claims and is non-severable from this Dispute Resolution section.  If the class action waiver is voided, found unenforceable, or limited with respect to any claim for which the Borrower seeks class-wide relief, then this Dispute Resolution section (except for this sentence) shall be null and void with respect to such claim, subject to the right to appeal the limitation or invalidation of the class action waiver.  However, this Dispute Resolution section shall remain valid with respect to all other claims and Disputes.  The parties acknowledge and agree that under no circumstances will a class action be arbitrated.

(ix)     <u>Applicability of Federal Arbitration Act</u>.  This instrument evidences transaction(s) in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this Dispute Resolution section.

**SIGNATURES**

**LEGAL ENTITY BORROWER** (All owners and principals of a For-Profit Legal Entity Borrower(s) must **ALSO** sign as individual guarantors)

If Borrower is a legal entity, the undersigned authorized representatives represent and warrant that: (i) they are duly authorized to execute and deliver, including to electronically execute and deliver, this Application and any other agreements in the name of and on behalf of such entity all in such form as may be requested by PNC, and any of which may contain a provision waiving the right to trial by jury; (ii) all necessary action to authorize the execution and delivery of this Application and such agreements has been properly taken; (iii) they are authorized to designate additional persons as authorized representatives who may request multiple draws or advances under an extension of credit, and perform all other actions and execute all such documents on behalf of the Borrower; and (iv) the Borrower is and will continue to be duly authorized to borrow under each Credit Facility and to perform all of the other terms and provisions of such agreements.

| Name of authorized representative (print): Matias Molina | |
|---|---|
| Title: Member | |
| Signature: | Date: 2/18/2020 |

**INDIVIDUAL GUARANTOR(S)**

| Name (print name; no title): MATIAS MOLINA | |
|---|---|
| Signature (name only): | Date: 2/18/2020 |


# PNC BANK

## CERTIFICATION REGARDING BENEFICIAL OWNERS OF LEGAL ENTITY CUSTOMERS

## I. GENERAL INSTRUCTIONS

### What is the purpose of this form?

To help the government fight financial crime, federal regulation requires financial institutions to obtain, verify and record information about the beneficial owners of legal entity customers. Legal entities can be abused to disguise involvement in terrorist financing, money laundering, tax evasion, corruption, fraud, and other financial crimes. Requiring the disclosure of key individuals who ultimately own or control a legal entity (i.e., the beneficial owners) helps law enforcement investigate and prosecute these crimes.

### Who has to complete this form?

This form must be completed by the person opening or updating an account on behalf of a legal entity. For the purposes of this form, a legal entity includes a corporation, limited liability company, or other entity that is created by a filing of a public document with a Secretary of State or similar office, a general partnership, and any similar business entity formed in the United States or a foreign country. Legal entity does not include sole proprietorships, unincorporated associations, or individuals opening or updating accounts on their own behalf.

### What information do I have to provide?

This form requires you to provide the name, address, date of birth and Social Security number (or passport number or other similar information, in the case of Non-U.S. Persons) for the following individuals (i.e., the beneficial owners):

(i)    Each individual, if any, who owns, directly or indirectly, 25 percent or more of the equity interests of the legal entity customer (e.g., each individual that owns 25 percent or more of the shares of a corporation); **and**

(ii)    An individual with significant responsibility for managing the legal entity customer (e.g., a Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, General Partner, President, Vice President, or Treasurer).

The number of individuals that satisfy this definition of "beneficial owner" may vary. Under section (i), depending on the factual circumstances, up to four individuals (but as few as zero) may need to be identified. Regardless of the number of individuals identified under section (i), you must provide the identifying information of one individual under section (ii). It is possible that in some circumstances the same individual might be identified under both sections (e.g., the President of Acme, Inc. who also holds a 30% equity interest). Thus, a completed form will contain the identifying information of at least one individual (under section (ii)), and up to five individuals (i.e., one individual under section (ii) and four 25 percent equity holders under section (i)).

You may also be asked to provide a copy of a driver's license or other identifying document for each beneficial owner and controlling party listed on this form.

**Note regarding updating information:** From time to time the information provided in this form may need to be updated due to changes in the ownership or controlling party of the legal entity customer or its beneficial owners. Further, from time to time PNC may be required to verify the continued accuracy of the information provided.

## II. CERTIFICATION OF BENEFICIAL OWNER(S)

**Persons opening or updating an account on behalf of a legal entity must provide the following information:**

a.    Name, Type, Address and Taxpayer Identification Number (TIN) of Legal Entity for Which the Account is Being Opened or Updated (i.e., the customer):

Entity Name:    GLOBALMAX LLC

Entity Type (e.g. Corporation, Partnership, etc.):    Corporation Foreign & Domestic

Entity Address: 13118 RUSHTONE COURT, ORLANDO, FLORIDA 32832-6993

Entity TIN: ████7765

b.  Name and Title of Person Opening or Updating Account:

Name: MATIAS MOLINA
Title: MEMBER

c.  **Beneficial Owner(s)**: The following information for <u>each individual</u>, if any, who, directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, owns 25 percent or more of the equity interests of the legal entity listed above.

**If no individual meets this definition, please check "Beneficial Owner Not Applicable" below and continue to section (d).**

**[ ] Beneficial Owner Not Applicable**

For U.S. Persons: *Select citizenship status and provide Social Security Number (SSN); For Non-U.S. Persons: Select citizenship status (if applicable) and provide SSN, Individual Taxpayer Identification Number (ITIN), Passport or Other Acceptable ID Information*

| | |
|---|---|
| **Name:** MATIAS MOLINA | **% of Ownership:** 100.00% |
| **Date of Birth:** ▓▓▓▓1978 | **SSN / ITIN #:** ▓▓▓9793 |
| **Residential Street Address:** 13118 RUSHTONE CT, ORLANDO, FL 32832 | |
| **Citizenship:**     [x] U.S. Citizen     [ ] U.S. Resident Alien     [ ] Immigrant Refugee | |
| **For Non-U.S. Persons:** | |
| ID Type: _____     ID #: _____     Country of Issuance: _____ | |

| | |
|---|---|
| **Name:** | **% of Ownership:** |
| **Date of Birth:** | **SSN / ITIN #:** _____ |
| **Residential Street Address:** | |
| **Citizenship:**     [ ] U.S. Citizen     [ ] U.S. Resident Alien     [ ] Immigrant Refugee | |
| **For Non-U.S. Persons:** | |
| ID Type: _____     ID #: _____     Country of Issuance: _____ | |

| | |
|---|---|
| **Name:** | **% of Ownership:** |
| **Date of Birth:** | **SSN / ITIN #:** _____ |
| **Residential Street Address:** | |
| **Citizenship:**     [ ] U.S. Citizen     [ ] U.S. Resident Alien     [ ] Immigrant Refugee | |
| **For Non-U.S. Persons:** | |
| ID Type: _____     ID #: _____     Country of Issuance: _____ | |

| | |
|---|---|
| **Name:** | **% of Ownership:** |
| **Date of Birth:** | **SSN / ITIN #:** _____ |
| **Residential Street Address:** | |
| **Citizenship:**     [ ] U.S. Citizen     [ ] U.S. Resident Alien     [ ] Immigrant Refugee | |
| **For Non-U.S. Persons:** | |
| ID Type: _____     ID #: _____     Country of Issuance: _____ | |

**Controlling Party:** The following information for <u>one individual</u> with significant responsibility for managing the legal entity listed above, such as:

- An executive officer or senior manager (e.g., Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, General Partner, President, Vice President, Treasurer); or
- Any other individual who regularly performs similar functions. (If appropriate, an individual listed under section (c) above may also be listed in this section (d)).

For U.S. Persons: *Select citizenship status and provide Social Security Number (SSN); For Non-U.S. Persons: Select citizenship status (if applicable) and provide SSN, Individual Taxpayer Identification Number (ITIN), Passport or Other Acceptable ID Information*

Entity TIN: ▓▓▓7765

| | |
|---|---|
| **Name:** MATIAS MOLINA | **Title:** MEMBER |
| **Date of Birth:** ███ 1978 | **SSN / ITIN #:** ███ 9793 |

**Residential Street Address:** 13118 RUSHTONE CT, ORLANDO, FL 32832

**Citizenship:**      [x] U.S. Citizen      [ ] U.S. Resident Alien      [ ] Immigrant Refugee

**For Non-U.S. Persons:**

ID Type: _____      ID #: _____      Country of Issuance: _____

I, _____ MATIAS MOLINA _____

hereby certify that I am authorized to disclose the information provided above and, to the best of my knowledge, the information provided is complete and correct. Further, I authorize PNC to share the information provided with any individual authorized to open or update accounts on behalf of the legal entity customer.

**Signature:** _____      **Date** 2/18/2020 _____

Entity TIN: ███ 7765

RDAOMS06-0518                            Page 3 of 3

Form **4506-T**
(March 2019)
Department of the Treasury
Internal Revenue Service

## Request for Transcript of Tax Return

► **Do not sign this form unless all applicable lines have been completed.**

► **Request may be rejected if the form is incomplete or illegible.**

► **For more information about Form 4506-T, visit** *www.irs.gov/form4506t.*

OMB No. 1545-1872

**Tip.** Use Form 4506-T to order a transcript or other return information free of charge. See the product list below. You can quickly request transcripts by using our automated self-help service tools. Please visit us at IRS.gov and click on "Get a Tax Transcript..." under "Tools" or call 1-800-908-9946. If you need a copy of your return, use Form 4506, Request for Copy of Tax Return. There is a fee to get a copy of your return.

| | |
|---|---|
| **1a** Name shown on tax return. If a joint return, enter the name shown first.<br><br>**GLOBALMAX LLC** | **1b** First social security number on tax return, individual taxpayer identification number, or employer identification number (see instructions)<br><br>▉7765 |
| **2a** If a joint return, enter spouse's name shown on tax return. | **2b** Second social security number or individual taxpayer identification number if joint tax return |

**3**  Current name, address (including apt., room, or suite no.), city, state, and ZIP code (see instructions)

**GLOBALMAX LLC 13118 RUSHTONE CT ORLANDO, FL 32832-6993**

**4**  Previous address shown on the last return filed if different from line 3 (see instructions)

**5a** If the transcript or tax information is to be mailed to a third party (such as a mortgage company), enter the third party's name, address, and telephone number.

**5b** Customer file number (if applicable) (see instructions)

**Caution:** If the tax transcript is being mailed to a third party, ensure that you have filled in lines 6 through 9 before signing. Sign and date the form once you have filled in these lines. Completing these steps helps to protect your privacy. Once the IRS discloses your tax transcript to the third party listed on line 5a, the IRS has no control over what the third party does with the information. If you would like to limit the third party's authority to disclose your transcript information, you can specify this limitation in your written agreement with the third party.

**6**  **Transcript requested.** Enter the tax form number here (1040, 1065, 1120, etc.) and check the appropriate box below. Enter only one tax form number per request. ►

**a**  **Return Transcript,** which includes most of the line items of a tax return as filed with the IRS. A tax return transcript does not reflect changes made to the account after the return is processed. Transcripts are only available for the following returns: Form 1040 series, Form 1065, Form 1120, Form 1120-A, Form 1120-H, Form 1120-L, and Form 1120S. Return transcripts are available for the current year and returns processed during the prior 3 processing years. Most requests will be processed within 10 business days   .   .   .   .   .   . ☐

**b**  **Account Transcript,** which contains information on the financial status of the account, such as payments made on the account, penalty assessments, and adjustments made by you or the IRS after the return was filed. Return information is limited to items such as tax liability and estimated tax payments. Account transcripts are available for most returns. Most requests will be processed within 10 business days   . ☐

**c**  **Record of Account,** which provides the most detailed information as it is a combination of the Return Transcript and the Account Transcript. Available for current year and 3 prior tax years. Most requests will be processed within 10 business days   .   .   .   .   . ☑

**7**  **Verification of Nonfiling,** which is proof from the IRS that you **did not** file a return for the year. Current year requests are only available after June 15th. There are no availability restrictions on prior year requests. Most requests will be processed within 10 business days   . ☐

**8**  **Form W-2, Form 1099 series, Form 1098 series, or Form 5498 series transcript.** The IRS can provide a transcript that includes data from these information returns. State or local information is not included with the Form W-2 information. The IRS may be able to provide this transcript information for up to 10 years. Information for the current year is generally not available until the year after it is filed with the IRS. For example, W-2 information for 2011, filed in 2012, will likely not be available from the IRS until 2013. If you need W-2 information for retirement purposes, you should contact the Social Security Administration at 1-800-772-1213. Most requests will be processed within 10 business days   . ☐

**Caution:** If you need a copy of Form W-2 or Form 1099, you should first contact the payer. To get a copy of the Form W-2 or Form 1099 filed with your return, you must use Form 4506 and request a copy of your return, which includes all attachments.

**9**  **Year or period requested.** Enter the ending date of the year or period, using the mm/dd/yyyy format. If you are requesting more than four years or periods, you must attach another Form 4506-T. For requests relating to quarterly tax returns, such as Form 941, you must enter each quarter or tax period separately.

| /   / | /   / | /   / | /   / |
|---|---|---|---|

**Caution:** Do not sign this form unless all applicable lines have been completed.

**Signature of taxpayer(s).** I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax information requested. If the request applies to a joint return, at least one spouse must sign. If signed by a corporate officer, 1 percent or more shareholder, partner, managing member, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506-T on behalf of the taxpayer. **Note:** This form must be received by IRS within 120 days of the signature date.

☑ Signatory attests that he/she has read the attestation clause and upon so reading declares that he/she has the authority to sign the Form 4506-T. See instructions.

Phone number of taxpayer on line 1a or 2a

**Sign Here**

► Signature (see instructions)   Date  2/13/2020

► **MEMBER**
**Title** (if line 1a above is a corporation, partnership, estate, or trust)

► Spouse's signature   Date

For Privacy Act and Paperwork Reduction Act Notice, see page 2.   Cat. No. 37667N   Form **4506-T** (Rev. 3-2019)

Form 4506-T (Rev. 3-2019)   Page **2**

Section references are to the Internal Revenue Code unless otherwise noted.

## Future Developments

For the latest information about Form 4506-T and its instructions, go to *www.irs.gov/form4506t*. Information about any recent developments affecting Form 4506-T (such as legislation enacted after we released it) will be posted on that page.

**What's New.** The transcripts provided by the IRS have been modified to protect taxpayers' privacy. Transcripts only display partial personal information, such as the last four digits of the taxpayer's Social Security Number. Full financial and tax information, such as wages and taxable income, is shown on the transcript.

A new optional Customer File Number field is available to use when requesting a transcript. You have the option of inputting a number, such as a loan number, in this field. You can input up to 10 numeric characters. The customer file number should not contain an SSN. This number will print on the transcript. The customer file number is an optional field and not required.

## General Instructions

**Caution:** Do not sign this form unless all applicable lines have been completed.

**Purpose of form.** Use Form 4506-T to request tax return information. You can also designate (on line 5a) a third party to receive the information. Taxpayers using a tax year beginning in one calendar year and ending in the following year (fiscal tax year) must file Form 4506-T to request a return transcript.

**Note:** If you are unsure of which type of transcript you need, request the Record of Account, as it provides the most detailed information.

**Tip.** Use Form 4506, Request for Copy of Tax Return, to request copies of tax returns.

**Automated transcript request.** You can quickly request transcripts by using our automated self-help service tools. Please visit us at IRS.gov and click on "Get a Tax Transcript..." under "Tools" or call 1-800-908-9946.

**Where to file.** Mail or fax Form 4506-T to the address below for the state you lived in, or the state your business was in, when that return was filed. There are two address charts: one for individual transcripts (Form 1040 series and Form W-2) and one for all other transcripts.

If you are requesting more than one transcript or other product and the chart below shows two different addresses, send your request to the address based on the address of your most recent return.

## Chart for individual transcripts (Form 1040 series and Form W-2 and Form 1099)

| If you filed an individual return and lived in: | Mail or fax to: |
|---|---|
| Alabama, Kentucky, Louisiana, Mississippi, Tennessee, Texas, a foreign country, American Samoa, Puerto Rico, Guam, the Commonwealth of the Northern Mariana Islands, the U.S. Virgin Islands, or A.P.O. or F.P.O. address | Internal Revenue Service RAIVS Team Stop 6716 AUSC Austin, TX 73301 <br><br> 855-587-9604 |
| Alaska, Arizona, Arkansas, California, Colorado, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Utah, Washington, Wisconsin, Wyoming | Internal Revenue Service RAIVS Team Stop 37106 Fresno, CA 93888 <br><br> 855-800-8105 |
| Connecticut, Delaware, District of Columbia, Florida, Georgia, Maine, Maryland, Massachusetts, Missouri, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia, West Virginia | Internal Revenue Service RAIVS Team Stop 6705 S-2 Kansas City, MO 64999 <br><br> 855-821-0094 |

## Chart for all other transcripts

| If you lived in or your business was in: | Mail or fax to: |
|---|---|
| Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Jersey, New Mexico, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, Washington, West Virginia, Wisconsin, Wyoming, a foreign country, American Samoa, Puerto Rico, Guam, the Commonwealth of the Northern Mariana Islands, the U.S. Virgin Islands, A.P.O. or F.P.O. address | Internal Revenue Service RAIVS Team P.O. Box 9941 Mail Stop 6734 Ogden, UT 84409 <br><br> 855-298-1145 |
| Maine, Massachusetts, New Hampshire, New York, Pennsylvania, Vermont | Internal Revenue Service RAIVS Team Stop 6705 S-2 Kansas City, MO 64999 <br><br> 855-821-0094 |

**Line 1b.** Enter your employer identification number (EIN) if your request relates to a business return. Otherwise, enter the first social security number (SSN) or your individual taxpayer identification number (ITIN) shown on the return. For example, if you are requesting Form 1040 that includes Schedule C (Form 1040), enter your SSN.

**Line 3.** Enter your current address. If you use a P.O. box, include it on this line.

**Line 4.** Enter the address shown on the last return filed if different from the address entered on line 3.

If the addresses on lines 3 and 4 are different and you have not changed your address with the IRS, file Form 8822, Change of Address. For a business address, file Form 8822-B, Change of Address or Responsible Party — Business.

**Line 5b.** Enter up to 10 numeric characters to create a unique customer file number that will appear on the transcript. The customer file number **should not** contain an SSN. Completion of this line is not required.

**Note.** If you use an SSN, name or combination of both, we will not input the information and the customer file number will be blank on the transcript.

**Line 6.** Enter only one tax form number per request.

**Signature and date.** Form 4506-T must be signed and dated by the taxpayer listed on line 1a or 2a. The IRS must receive Form 4506-T within 120 days of the date signed by the taxpayer or it will be rejected. Ensure that all applicable lines are completed before signing.



*You must check the box in the signature area to acknowledge you have the authority to sign and request the information. The form will not be processed and returned to you if the box is unchecked.*

**Individuals.** Transcripts of jointly filed tax returns may be furnished to either spouse. Only one signature is required. Sign Form 4506-T exactly as your name appeared on the original return. If you changed your name, also sign your current name.

**Corporations.** Generally, Form 4506-T can be signed by: (1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, or (3) any officer or employee on written request by any principal officer and attested to by the secretary or other officer. A bona fide shareholder of record owning 1 percent or more of the outstanding stock of the corporation may submit a Form 4506-T but must provide documentation to support the requester's right to receive the information.

**Partnerships.** Generally, Form 4506-T can be signed by any person who was a member of the partnership during any part of the tax period requested on line 9.

**All others.** See section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer.

**Note:** If you are Heir at law, Next of kin, or Beneficiary you must be able to establish a material interest in the estate or trust.

**Documentation.** For entities other than individuals, you must attach the authorization document. For example, this could be the letter from the principal officer authorizing an employee of the corporation or the letters testamentary authorizing an individual to act for an estate.

**Signature by a representative.** A representative can sign Form 4506-T for a taxpayer only if the taxpayer has specifically delegated this authority to the representative on Form 2848, line 5. The representative must attach Form 2848 showing the delegation to Form 4506-T.

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to establish your right to gain access to the requested tax information under the Internal Revenue Code. We need this information to properly identify the tax information and respond to your request. You are not required to request any transcript; if you do request a transcript, sections 6103 and 6109 and their regulations require you to provide this information, including your SSN or EIN. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506-T will vary depending on individual circumstances. The estimated average time is: **Learning about the law or the form,** 10 min.; **Preparing the form,** 12 min.; and **Copying, assembling, and sending the form to the IRS,** 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506-T simpler, we would be happy to hear from you. You can write to:

Internal Revenue Service
Tax Forms and Publications Division
1111 Constitution Ave. NW, IR-6526
Washington, DC 20224

Do not send the form to this address. Instead, see *Where to file* on this page.

Form **4506-T**
(March 2019)
Department of the Treasury
Internal Revenue Service

## Request for Transcript of Tax Return

▶ Do not sign this form unless all applicable lines have been completed.
▶ Request may be rejected if the form is incomplete or illegible.
▶ For more information about Form 4506-T, visit *www.irs.gov/form4506t*.

OMB No. 1545-1872

**Tip.** Use Form 4506-T to order a transcript or other return information free of charge. See the product list below. You can quickly request transcripts by using our automated self-help service tools. Please visit us at IRS.gov and click on "Get a Tax Transcript..." under "Tools" or call 1-800-908-9946. If you need a copy of your return, use Form 4506, Request for Copy of Tax Return. There is a fee to get a copy of your return.

| | |
|---|---|
| **1a** Name shown on tax return. If a joint return, enter the name shown first. <br><br> MATIAS MOLINA | **1b** First social security number on tax return, individual taxpayer identification number, or employer identification number (see instructions) <br><br> ███-9793 |
| **2a** If a joint return, enter spouse's name shown on tax return. | **2b** Second social security number or individual taxpayer identification number if joint tax return |

**3** Current name, address (including apt., room, or suite no.), city, state, and ZIP code (see instructions)

MATIAS MOLINA 13118 RUSHTONE CT ORLANDO FL 32832-6993

**4** Previous address shown on the last return filed if different from line 3 (see instructions)

**5a** If the transcript or tax information is to be mailed to a third party (such as a mortgage company), enter the third party's name, address, and telephone number.

**5b** Customer file number (if applicable) (see instructions)

**Caution:** If the tax transcript is being mailed to a third party, ensure that you have filled in lines 6 through 9 before signing. Sign and date the form once you have filled in these lines. Completing these steps helps to protect your privacy. Once the IRS discloses your tax transcript to the third party listed on line 5a, the IRS has no control over what the third party does with the information. If you would like to limit the third party's authority to disclose your transcript information, you can specify this limitation in your written agreement with the third party.

**6** Transcript requested. Enter the tax form number here (1040, 1065, 1120, etc.) and check the appropriate box below. Enter only one tax form number per request. ▶

**a** **Return Transcript,** which includes most of the line items of a tax return as filed with the IRS. A tax return transcript does not reflect changes made to the account after the return is processed. Transcripts are only available for the following returns: Form 1040 series, Form 1065, Form 1120, Form 1120-A, Form 1120-H, Form 1120-L, and Form 1120S. Return transcripts are available for the current year and returns processed during the prior 3 processing years. Most requests will be processed within 10 business days . . . . . . ☐

**b** **Account Transcript,** which contains information on the financial status of the account, such as payments made on the account, penalty assessments, and adjustments made by you or the IRS after the return was filed. Return information is limited to items such as tax liability and estimated tax payments. Account transcripts are available for most returns. Most requests will be processed within 10 business days . ☐

**c** **Record of Account,** which provides the most detailed information as it is a combination of the Return Transcript and the Account Transcript. Available for current year and 3 prior tax years. Most requests will be processed within 10 business days . . . . . . ☑

**7** Verification of Nonfiling, which is proof from the IRS that you **did not** file a return for the year. Current year requests are only available after June 15th. There are no availability restrictions on prior year requests. Most requests will be processed within 10 business days . . ☐

**8** Form W-2, Form 1099 series, Form 1098 series, or Form 5498 series transcript. The IRS can provide a transcript that includes data from these information returns. State or local information is not included with the Form W-2 information. The IRS may be able to provide this transcript information for up to 10 years. Information for the current year is generally not available until the year after it is filed with the IRS. For example, W-2 information for 2011, filed in 2012, will likely not be available from the IRS until 2013. If you need W-2 information for retirement purposes, you should contact the Social Security Administration at 1-800-772-1213. Most requests will be processed within 10 business days . ☐

**Caution:** If you need a copy of Form W-2 or Form 1099, you should first contact the payer. To get a copy of the Form W-2 or Form 1099 filed with your return, you must use Form 4506 and request a copy of your return, which includes all attachments.

**9** Year or period requested. Enter the ending date of the year or period, using the mm/dd/yyyy format. If you are requesting more than four years or periods, you must attach another 4506-T. For requests relating to quarterly tax returns, such as Form 941, you must enter each quarter or tax period separately.

| / / | / / | / / | / / |
|---|---|---|---|

**Caution:** Do not sign this form unless all applicable lines have been completed.

**Signature of taxpayer(s).** I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax information requested. If the request applies to a joint return, at least one spouse must sign. If signed by a corporate officer, 1 percent or more shareholder, partner, managing member, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506-T on behalf of the taxpayer. **Note:** This form must be received by IRS within 120 days of the signature date.

☑ Signatory attests that he/she has read the attestation clause and upon so reading declares that he/she has the authority to sign the Form 4506-T. See instructions.

Phone number of taxpayer on line 1a or 2a

**Sign Here**

Signature (see instructions)   Date 3/28/2020

Title (if line 1a above is a corporation, partnership, estate, or trust)

Spouse's signature   Date

For Privacy Act and Paperwork Reduction Act Notice, see page 2.   Cat. No. 37667N   Form **4506-T** (Rev. 3-2019)

Form 4506-T (Rev. 3-2019)  Page **2**

Section references are to the Internal Revenue Code unless otherwise noted.

## Future Developments

For the latest information about Form 4506-T and its instructions, go to *www.irs.gov/form4506t*. Information about any recent developments affecting Form 4506-T (such as legislation enacted after we released it) will be posted on that page.

**What's New.** The transcripts provided by the IRS have been modified to protect taxpayers' privacy. Transcripts will display partial personal information, such as the last four digits of the taxpayer's Social Security Number. Full financial and tax information, such as wages and taxable income, is shown on the transcript.

A new optional Customer File Number field is available to use when requesting a transcript. You have the option of inputting a number, such as a loan number, in this field. You can input up to 10 numeric characters. The customer file number should not contain an SSN. This number will print on the transcript. The customer file number is an optional field and not required.

## General Instructions

**Caution:** Do not sign this form unless all applicable lines have been completed.

**Purpose of form.** Use Form 4506-T to request tax return information. You can also designate (on line 5a) a third party to receive the information. Taxpayers using a tax year beginning in one calendar year and ending in the following year (fiscal tax year) must file Form 4506-T to request a return transcript.

**Note:** If you are unsure of which type of transcript you need, request the Record of Account, as it provides the most detailed information.

**Tip.** Use Form 4506, Request for Copy of Tax Return, to request copies of tax returns.

**Automated transcript request.** You can quickly request transcripts by using our automated self-help service tools. Please visit us at IRS.gov and click on "Get a Tax Transcript..." under "Tools" or call 1-800-908-9946.

**Where to file.** Mail or fax Form 4506-T to the address below for the state you lived in, or the state your business was in, when that return was filed. There are two address charts: one for individual transcripts (Form 1040 series and Form W-2) and one for all other transcripts.

If you are requesting more than one transcript or other product and the chart below shows two different addresses, send your request to the address based on the address of your most recent return.

## Chart for individual transcripts (Form 1040 series and Form W-2 and Form 1099)

| If you filed an individual return and lived in: | Mail or fax to: |
|---|---|
| Alabama, Kentucky, Louisiana, Mississippi, Tennessee, Texas, a foreign country, American Samoa, Puerto Rico, Guam, the Commonwealth of the Northern Mariana Islands, the U.S. Virgin Islands, or A.P.O. or F.P.O. address | Internal Revenue Service RAIVS Team Stop 6716 AUSC Austin, TX 73301<br><br>855-587-9604 |
| Alaska, Arizona, Arkansas, California, Colorado, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Utah, Washington, Wisconsin, Wyoming | Internal Revenue Service RAIVS Team Stop 37106 Fresno, CA 93888<br><br>855-800-8105 |
| Connecticut, Delaware, District of Columbia, Florida, Georgia, Maine, Maryland, Massachusetts, Missouri, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia, West Virginia | Internal Revenue Service RAIVS Team Stop 6705 S-2 Kansas City, MO 64999<br><br>855-821-0094 |

## Chart for all other transcripts

| If you lived in or your business was in: | Mail or fax to: |
|---|---|
| Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Jersey, New Mexico, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, Washington, West Virginia, Wisconsin, Wyoming, a foreign country, American Samoa, Puerto Rico, Guam, the Commonwealth of the Northern Mariana Islands, the U.S. Virgin Islands, A.P.O. or F.P.O. address | Internal Revenue Service RAIVS Team P.O. Box 9941 Mail Stop 6734 Ogden, UT 84409<br><br>855-298-1145 |
| Maine, Massachusetts, New Hampshire, New York, Pennsylvania, Vermont | Internal Revenue Service RAIVS Team Stop 6705 S-2 Kansas City, MO 64999<br><br>855-821-0094 |

**Line 1b.** Enter your employer identification number (EIN) if your request relates to a business return. Otherwise, enter the first social security number (SSN) or your individual taxpayer identification number (ITIN) shown on the return. For example, if you are requesting Form 1040 that includes Schedule C (Form 1040), enter your SSN.

**Line 3.** Enter your current address. If you use a P.O. box, include it on this line.

**Line 4.** Enter the address shown on the last return filed if different from the address entered on line 3.

**Note:** If the addresses on lines 3 and 4 are different and you have not changed your address with the IRS, file Form 8822, Change of Address. For a business address, file Form 8822-B, Change of Address or Responsible Party — Business.

**Line 5b.** Enter up to 10 numeric characters to create a unique customer file number that will appear on the transcript. The customer file number **should not** contain an SSN. Completion of this line is not required.

**Note.** If you use an SSN, name or combination of both, we will not input the information and the customer file number will be blank on the transcript.

**Line 6.** Enter only one tax form number per request.

**Signature and date.** Form 4506-T must be signed and dated by the taxpayer listed on line 1a or 2a. The IRS must receive Form 4506-T within 120 days of the date signed by the taxpayer or it will be rejected. Ensure that all applicable lines are completed before signing.



*You must check the box in the signature area to acknowledge you have the authority to sign and request the information. The form will not be processed and returned to you if the box is unchecked.*

**Individuals.** Transcripts of jointly filed tax returns may be furnished to either spouse. Only one signature is required. Sign Form 4506-T exactly as your name appeared on the original return. If you changed your name, also sign your current name.

**Corporations.** Generally, Form 4506-T can be signed by: (1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, or (3) any officer or employee on written request by any principal officer and attested to by the secretary or other officer. A bona fide shareholder of record owning 1 percent or more of the outstanding stock of the corporation may submit a Form 4506-T but must provide documentation to support the requester's right to receive the information.

**Partnerships.** Generally, Form 4506-T can be signed by any person who was a member of the partnership during any part of the tax period requested on line 9.

**All others.** See section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer.

**Note:** If you are Heir at law, Next of kin, or Beneficiary you must be able to establish a material interest in the estate or trust.

**Documentation.** For entities other than individuals, you must attach the authorization document. For example, this could be the letter from the principal officer authorizing an employee of the corporation or the letters testamentary authorizing an individual to act for an estate.

**Signature by a representative.** A representative can sign Form 4506-T for a taxpayer only if the taxpayer has specifically delegated this authority to the representative on Form 2848, line 5. The representative must attach Form 2848 showing the delegation to Form 4506-T.

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to establish your right to gain access to the requested tax information under the Internal Revenue Code. We need this information to properly identify the tax information and respond to your request. You are not required to request any transcript; if you do request a transcript, sections 6103 and 6109 and their regulations require you to provide this information, including your SSN or EIN. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506-T will vary depending on individual circumstances. The estimated average time is: **Learning about the law or the form,** 10 min.; **Preparing the form,** 12 min.; and **Copying, assembling, and sending the form to the IRS,** 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506-T simpler, we would be happy to hear from you. You can write to:

Internal Revenue Service Tax Forms and Publications Division 1111 Constitution Ave. NW, IR-6526 Washington, DC 20224

Do not send the form to this address. Instead, see *Where to file* on this page.

PNC Bank, National Association
P5-PCLC-01-D
2730 Liberty Avenue
Pittsburgh, PA 15222

 **PNC BANK**

**BUSINESS BANKING**

February 19, 2020

Globalmax LLC                    1587
13118 Rushtone CT
Orlando, FL 32832

## SMALL BUSINESS LINE OF CREDIT AGREEMENT

**Borrower:**
Globalmax LLC
13118 Rushtone CT
Orlando, FL 32832

**Bank:**
PNC Bank, National Association
222 Delaware Avenue
Wilmington, DE 19801
Attn: Business Banking

**Maximum Credit Limit:**
$100,000

**Annual Fee:**
$175

**Interest Rate: The Index** as defined in Section 9 **plus 2.67% (the "Margin")**

**Effective Date:**
February 19, 2020



**PNC BANK**                                                    **BUSINESS BANKING**

# SMALL BUSINESS LINE OF CREDIT AGREEMENT
# TERMS AND CONDITIONS

We are pleased to have you as a customer and to provide you with a copy of these terms and conditions (the "**Terms and Conditions**") governing the line of credit ("Line" or this "account") provided to you by us. These Terms and Conditions are an important part of your Business Banking Line of Credit Agreement. A supply of checks to enable you to begin using your account will be mailed to you shortly. Please read these Terms and Conditions carefully. Your use or acceptance of any Line proceeds will be deemed evidence of your agreement to these Terms and Conditions.

**1. DEFINITIONS.** In this Agreement, the following definitions apply:

"Agreement" means your application for the Line and this Business Banking Line of Credit Agreement and any amendment or addendum to this Agreement.

"We," "us," "our" or "Bank" means PNC Bank, National Association or any person or entity to whom the rights of the Bank have been assigned.

"You," "your," "yours" or "Borrower" means the individual(s) or entity(ies) identified on the first page of these Terms and Conditions as a Borrower, who have applied to the Bank for the Line, and for whom an account has been approved.

"Billing Cycle" means the interval between the dates on which monthly statements are prepared.

"Effective Date" means the "Effective Date" identified on the first page of these Terms and Conditions.

"Maximum Credit Limit" or "Maximum Credit" means the total dollar amount of credit available to you from time to time, the initial amount of which is identified on the first page of these Terms and Conditions.

"Payment Due Date" means the date which will appear each month as the "Payment Due Date" on the billing statement. The Payment Due Date will be determined by the Bank at the Bank's discretion and is subject to change at the option of the Bank.

"SBA Express Loan" means a Line approved under the U.S. Small Business Administration's Express Loan Program.

"SBA Express Loan Expiration Date" means for an SBA Express Loan only, the date that is the second anniversary of the Date of Loan, or such later date as may be designated by written notice from us to you. Unless the SBA Express Loan is otherwise Terminated or converted, all outstanding balances, payments and other charges due pursuant to the terms of this Agreement shall be due and payable on the SBA Express Loan Expiration Date. You acknowledge and agree that in no event will we be under any obligation to extend or renew this account beyond the initial SBA Express Loan Expiration Date.

"Terminated" or "Termination" means that you will no longer be able to obtain loans or any extension of credit on this account. Termination affects the account permanently.

**2. GENERAL DESCRIPTION OF THE ACCOUNT.** This account is a revolving line account, sometimes called a line of credit. It is intended to be used only for business purposes. You represent that it will not be used primarily for personal, family, or household purposes. You may obtain loans on this account in the ways and during the period described in the "Account Privileges" section of this Agreement up to the Maximum Credit Limit. Loans will be added to the balance of this account, to be repaid by monthly payments. As the balance is repaid, the credit will again be available to you, up to the Maximum Credit until this account is Terminated. Interest will be charged on the outstanding principal balance at a rate that may change from time to time. Each new rate will apply to the outstanding balance on your account and all new borrowings until the rate changes again.

**3. AUTHORIZED SIGNERS.** In the Agreement, you are to designate the person(s) who are authorized to write checks or obtain funds from this account by any other means as we may, from time to time, permit without the signature or endorsement of any other Borrower. Any one of the authorized signers may act alone. If more than one name is identified as Borrower, each Borrower named has authority to write checks or obtain funds from this account by any other means as we may, from time to time, permit without the signature or endorsement of any other Borrower. We may honor drafts drawn by an authorized signer even if the drafts are made payable to the signer, to cash, or for deposits to the authorized signer's personal account. We have no duty to investigate or question the application of Line funds. We may refuse to honor drafts or requests for funds if we are uncertain as to anyone's continuing authority to act as an authorized signer, or if the signature on a draft does not appear to be that of an authorized signer.

**4. HOW YOU AGREE TO THE TERMS OF THIS ACCOUNT.** Applying for the Line, using your account or permitting someone else to use your account constitutes your agreement with us to be bound by this Agreement.

**5. ACCOUNT PRIVILEGES.** We have established this account for you with a Maximum Credit Limit in the amount set forth on the first page of these Terms and Conditions which may change from time to time and which will appear on your monthly billing statement. You may use this Line to obtain loans from time to time, subject to the terms of this Agreement, by writing checks given by us to you for that special purpose in amounts of not less than $1,000.00 or by using other methods which we may permit. You may not use this account to make payments on this or any other PNC Bank account. If the Line is not an SBA Express Loan, you may continue to obtain loans under the Line until the earlier of: (i) the date that the account is Terminated, or (ii) the Conversion Notice Date if this account is converted to a term loan.

If the account is an SBA Express Loan, you may continue to obtain funds under the Line until the earliest of: (i) the SBA Express Loan Expiration Date, (ii) the Conversion Notice Date if this account is converted to a term loan, or (iii) the date on which this account is Terminated.

You authorize us to charge this account for all checks you write on this account (even if such checks or loans cause the balance to exceed the Maximum Credit Limit), for loans you obtain and for interest, the Annual Fee, and any other amounts which you agree in this Agreement to pay. If you lose the checks which were given to you to obtain loans from this account, or someone has obtained them without your permission, you must tell us immediately. We are not obligated to pay checks if the balance on this account exceeds the Maximum Credit Limit or if payment of the check will cause your balance to exceed the Maximum Credit Limit. We are not obligated to pay any checks dated, drawn or issued by you or received by us after this account is Terminated, expired or otherwise unavailable pursuant to the terms of this Agreement, or if your checks have been reported lost or stolen. You agree that the only checks that you will write to obtain funds from the account will be those issued by us for that special purpose.



# PNC BANK

**BUSINESS BANKING**

**6. OVERDRAFT PROTECTION.** You may request that the Line be used as overdraft protection for a PNC business checking account designated by you (the "**Account**"). If there is no Event of Default and PNC determines in its sole discretion that the Line may be used as, and the Account is eligible for, overdraft protection, PNC will make a deposit (the "**Deposit**") to the Account whenever the Borrower makes a withdrawal (whether by check or in any other manner) from the Account that exceeds the balance in the Account (the "**Overdrawn Amount**"). Each Deposit will be considered an advance under the Line and will be in an amount equal to the Overdrawn Amount, rounded up to the next whole $1.00, however the amount of the Deposit will not be less than $50.00. Notwithstanding the foregoing or any provision herein to the contrary, the Bank does not have to make a Deposit to the Account if the Deposit will cause the aggregate outstanding principal balance of the Line to exceed the Maximum Credit Limit or would otherwise cause a default or Event of Default under the Agreement or any other document executed in connection herewith. Checks written on the Account which are returned will be subject to PNC's regular overdraft and other charges.

**7. YOU AGREE:**
a) not to write checks for less than $1,000.00;
b) to repay all amounts advanced hereunder together with interest as provided in this Agreement;
c) to pay at least the Minimum Monthly Payment each month on or before the Payment Due Date;
d) not to obtain funds or write checks from this account which will cause the outstanding balance on this account at any time to exceed the Maximum Credit Limit which we have now approved or may approve at any time in the future;
e) to immediately pay any amount outstanding in excess of the Maximum Credit Limit;
f) to give us such financial statements and other information as we may request from time to time;
g) to pay us costs of collection, including court costs and reasonable legal fees and expenses allowed by law, if we refer your account to an attorney for collection;
h) not to give us false information or signatures at any time or let anyone who is not a Borrower use this account;
i) to pay a late charge, as provided as provided in Section 10 of these Terms and Conditions, for each month any payment is not made within fifteen (15) days of its Payment Due Date;
j) to pay "Other Charges" as provided in the "Other Charges" section of this Agreement;
k) to honor any and all other promises that you make in this Agreement;
l) to not create, incur, assume or suffer to exist any indebtedness for borrowed money other than (x) obligations owing to PNC Bank, and (y) open account trade debt incurred in the ordinary course of business and not past due;
m) to not declare or pay any dividends on or make any distribution with respect to any class of the Borrower's equity or ownership interest, or purchase, redeem, retire or otherwise acquire any of the Borrower's equity;
n) to not make or permit, any change in the composition of the Borrower's current executive management or its equity ownership; and
o) to not make acquisitions of all or substantially all of the property or assets of any person, firm, corporation or other entity.

**8. SECURITY INTEREST.** Money on deposit with us and property held by us secure loans made and all other amounts outstanding under this Agreement; collateral securing other obligations to us may also secure amounts outstanding under this Agreement; provided, however, that any such collateral is not intended to include real property, and we hereby disclaim the applicability of any lien on such real property.

**9. INTEREST.** The interest rate on the Line is subject to change from time to time based on changes in an independent index which will be the highest Prime Rate published in the "Money Rates" section of The Wall Street Journal (the "Index"). The interest rate change will not occur more often than each month. The Index for a Billing Cycle is determined on the first day of that cycle and will be the Index on the last day on which the Index was published in the preceding calendar month. The Index is not necessarily the lowest rate we charge on our loans. If the Index becomes unavailable during the term of this account, we may designate a substitute index after notifying you. We will tell you the current Index rate upon your request. You understand that we may provide lines of credit and loans based on other rates as well. The interest rate to be applied to the unpaid principal balance of this account is determined by adding a number of percentage points (the "Margin") to the Index. The Margin is set forth on the first page of these Terms and Conditions. Interest on the principal balance outstanding on this account is computed on a 365/360 simple interest basis; that is, by applying the ratio of the annual interest rate on the first day of the Billing Cycle over a year of 360 days to obtain a daily periodic rate, multiplied by the average daily principal balance during the Billing Cycle, multiplied by the actual number of days in the Billing Cycle. Under no circumstances will the interest rate on this account be more than the maximum rate allowed by applicable law.

**10. OTHER CHARGES.**
a) LATE CHARGES. If you fail to pay us the Minimum Monthly Payment within fifteen (15) days of the Payment Due Date reflected on your monthly statement, we may charge you a late charge of $100 or 5% of the amount past due, whichever is less.
b) ANNUAL FEE. Your account is subject to the Annual Fee described on the first page of these Terms and Conditions. The Annual Fee is not refundable and will be charged to your account during the first Billing Cycle after the Date of Loan and the Billing Cycle immediately following each anniversary of the Date of Loan.
c) CREDIT LINE RETURNED CHECK AND OVERLIMIT FEES. We will charge you a fee of $25.00 for each check written on this account which is properly dishonored by us for any reason. We will charge you a fee of $25.00 for each check written on this account which is paid by us which causes your outstanding principal balance to exceed your Maximum Credit Limit and for any other event which causes your outstanding principal balance to exceed your Maximum Credit Limit.
d) STOP PAYMENT FEE. We will charge you a Stop Payment Fee of $20.00 if you request us to stop payment on a check written on this account.
e) RETURNED CHECK FEE. We will charge you a fee of $25.00 if your payment on this account is made with a check that is returned for "not sufficient funds" in the account on which the check is written.

**11. MINIMUM MONTHLY PAYMENTS.** The Minimum Monthly Payment will be due each month on or before the Payment Due Date. Your payments must be made in U.S. dollars and sent to us at the address shown on your monthly billing statement or at such other place as we may designate in writing. For so long as you have authorized us to automatically deduct your monthly payments due each month from a checking account with us and designated by you ("Primary Checking Account"), the deduction will occur on or about the Payment Due Date.
a) The Minimum Monthly Payment during each Billing Cycle will be the greater of: (i) the sum of all Annual and other fees, if applicable (but not including late charges), **plus** one and one-half percent (1.5%) of the Ending Balance (less any past due amount) reflected on the billing statement; or (ii) $100.00 Any amounts past due will be added to the Minimum Monthly Payment. In no event, however, will the Minimum Monthly Payment be greater than the entire outstanding balance on the account. **"Ending Balance"** means (i) the ending balance shown on the immediately preceding billing statement **plus** (ii) accrued interest **plus** (iii) new loans posted since the date of the immediately preceding billing statement **plus** (iv) any fees and charges **minus** (v) payments posted since the date of the immediately preceding billing statement.
b) Prepayment. If you pay an amount greater than the Minimum Monthly Payment in any month, this will not affect the amount of the next Minimum Monthly Payment, and you will nevertheless be required to make the Minimum Monthly Payment the next month. **You may make monthly payments in any amount in excess of the Minimum Monthly Payment and may pay the entire balance or any part of it at any time provided that you pay at least the Minimum Monthly Payment in any month when it is due.**
c) Payment. We may, at our option, permit you, from time to time, to skip a Minimum Monthly Payment. If we allow you to skip a Minimum Monthly Payment, interest will continue to accrue on your unpaid balance.

**PNC BANK**  **BUSINESS BANKING**

**12. AUTOMATIC PAYMENT; DEPOSITORY; INCREASE OF MARGIN.** You agree to establish and maintain a business checking account with us during the term of this Agreement which shall be your primary depository account. You authorize us to automatically deduct your monthly payments on the account from the Primary Checking Account. If there are insufficient collected and available funds in the Primary Checking Account, we will not be required to advance funds to cover the payment. We reserve the right to terminate the automatic payment service at any time, with or without cause. If you revoke your authorization for us to automatically deduct your monthly payments on the account from the Primary Checking Account for any reason whatsoever or fail to maintain a checking account with us which may be charged for the monthly payments, we may, at our option, upon thirty (30) days' notice to you, increase the interest rate Margin set forth on the first page of these Terms and Conditions by twenty-five (25) basis points (0.25%).

If you fail to establish and maintain your primary depository account with us, we may, at our option, upon thirty (30) days' notice to you, increase the interest rate Margin set forth on the first page of these Terms and Conditions by up to one hundred (100) basis points (1.00%).

Our right to increase the interest rate Margin pursuant to this Section shall be in addition to any other rights or remedies we may have, all of which are hereby reserved, and shall not constitute a waiver, release or limitation upon our exercise of any such rights or remedies.

**13. APPLICATION OF PAYMENTS.** Unless otherwise specified in writing, we will apply payments received to accrued interest, fees, charges, expenses (including attorneys' fees), and principal in any order that we may choose, in our sole discretion.

**14. MONTHLY STATEMENTS AND CHECKS.** We will send you a monthly statement for each Billing Cycle in which activity is posted to this account or if there is a debit or credit balance of more than $1.00 or for any Billing Cycle in which we impose interest. The statement will show advances made, the amount due, accrued unpaid interest, payments made and the balance which you owe. Any subsidiary or affiliate of ours may act as your agent in receiving payments on this account. Unless you notify of us in writing of errors in the statement within sixty (60) days from the date it is mailed, the statement shall be considered correct and accepted by you. We need not mail you a statement if we deem this account uncollectable or if delinquency collection proceedings have been started by us. If there is more than one Borrower, each agrees that if the statement is sent to and accepted by any of you, it shall be considered correct as to and accepted by all of you. We shall retain all checks drawn on this account.

**15. CREDIT REVIEW.** By accepting this account, each Borrower who is an individual hereby requests and provides written authorization to us to check the Borrower's credit and employment history and to answer any questions about our experience with you. You also request and authorize us to obtain from and exchange information (including personal information) with our affiliates, correspondents and any third party (including national credit bureaus) that performs services for us in connection with this account or to whom this account may be transferred. Such authorization shall extend to obtaining a credit profile in (i) considering the account, (ii) assessing creditworthiness and (iii) considering extensions of credit, including on an ongoing basis, as necessary for the purposes of (a) update, modification or extension of such credit or additional credit, (b) reviewing, administering or collecting the resulting account and (c) reporting on the repayment and satisfaction of such credit obligations. If you ask, we will tell you whether or not a consumer credit report was requested from a credit bureau and the name and address of the credit bureau(s) that provided the consumer credit report. At our option, we may also obtain updated income verifications on you as is reasonably necessary to protect our interests. Each Borrower who is an individual further acknowledges that acceptance of this facility constitutes such Borrower's ratification of its prior requests and authorizations with respect to the matters set forth herein.

**16. CUSTOMER INFORMATION.** You understand that we share transaction information with PNC Bank affiliates and with any third party that performs services for us in connection with this account or to whom this account may be transferred. We may also share other information you or a third party may provide. If you do not want us to share personal, non-transaction information with PNC Bank affiliates, please write us at PNC Information Sharing Options, P. O. Box 96066, Pittsburgh, Pennsylvania 15226. Be sure to include your name, address, account number(s) or Social Security/EIN number(s). Alternatively, you can also contact us via phone at 1- 800-762-2118.

**17. DEFAULT.** You will be in default if any of the following happens:
a) If you fail to pay any payment when it is due;
b) If you fail to pay us any amount outstanding in excess of the Maximum Credit Limit within ten (10) days after we mail a notice to you demanding the money;
c) If you use the proceeds from this account for a purpose not permitted under this Agreement;
d) If you or any guarantor fail to provide us with an updated financial statement or other financial information upon our request;
e) If you die or are put in jail, or if a court with proper jurisdiction to do so finds that you are incapacitated or incompetent;
f) If you make an assignment for the benefit of creditors, if you are or become insolvent, if a receiver is appointed for any part of your property, or if bankruptcy or receivership proceedings are filed by or against you;
g) If anyone files a lawsuit or gets a judgment against you, or attaches or levies on any property of yours;
h) If you do not keep any promise or perform any duty within ten (10) days of any change in your address;
i) If you have made any untrue statements or have provided us with false information or signatures at any time;
j) If you fail to keep any promise or perform any duty in this Agreement or any other loan or agreement with us;
k) If you default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of your property or your ability to repay this account or perform your obligations under this Agreement;
l) If any creditor tries to take any of your property on or in which we have a lien or security interest (this includes a garnishment of any of your accounts with us);
m) If a material adverse change occurs in your financial condition, or we believe the prospect of payment or performance of the account is impaired;
n) If you fail to establish and maintain your primary deposit account with us;
o) If any of the events described in this default section occurs with respect to any guarantor of this account;
p) If any guarantor seeks, claims or otherwise attempts to limit, modify, revoke such guarantor's guaranty of this account or any other loan with us; or
q) If we, in good faith, deem ourselves insecure.

**18. OUR RIGHTS UPON DEFAULT.** If a default occurs, we will have no further duty to pay checks or make advances from this account and this account will be deemed Terminated. This will happen without prior notice to you. If we choose, at our sole option, to pay checks from this account or make advances after default, you agree that we may charge those loans to this account. If any event described in sections 17(f), (g) or (h) happens, all amounts which you owe us under this Agreement shall be immediately due and payable without prior notice to you, or right to cure, except as required by law. If any other event specified in Section 17 occurs, all amounts which you owe us under this Agreement shall be due and payable immediately, at our option, without prior notice to you, or right to cure, except as required by law. The other provisions of this Agreement will continue to apply to this account. If we get a judgment after default and/or you are a debtor in an action filed by or against you under the Bankruptcy Code, unless prohibited by applicable law the rates applicable to this account will continue to apply to the balances on this account. A default under this Agreement is a default under every other note, loan agreement or security agreement that you have with us. Upon default, if we declare the entire outstanding principal, unpaid interest and charges on your account immediately due and payable, you must pay that amount immediately. Upon your default, we may increase the interest Margin up to five percentage points (5%) over the variable interest rate on this account, if allowed by law.

APSB



# PNC BANK

**BUSINESS BANKING**

We may hire or pay someone else to help us collect this account if you fail to pay in accordance with this Agreement. You agree to pay our collection costs (including, without limitation, the cost of in-house attorneys and staff), whether or not we hire anyone else to help us collect this account. This includes, subject to any limits under applicable law, our attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals and any anticipated post-judgment collection services. In addition to all other sums provided by law, you will also pay any court costs if not prohibited by applicable law.

**19. TERMINATION BY YOU.** You may Terminate this Agreement at any time that you are not in default by: (i) mailing or delivering a written notice to us that you are Terminating this account; (ii) paying us the outstanding principal balance of the account, the accrued and unpaid interest on the balance, and all other amounts due in accordance with the terms of this Agreement; and (iii) immediately returning all checks and other credit access devices, if applicable, which are our property and that were provided to you to access your account. You will continue to be liable for any advances made pursuant to unreturned checks. Any use of checks after the account is Terminated may be considered fraudulent.

**20. TERMINATION BY US.** At any time while the Line is outstanding, we may, with or without cause, provide written notice to you Terminating this account and demanding full payment of the outstanding principal balance of the account, the accrued and unpaid interest on the balance, and all other amounts due in accordance with the terms of this Agreement (the "Termination Notice"). Unless the Termination Notice provides otherwise, (i) effective as of the date of the Termination Notice (the "Termination Notice Date"), the Line shall be deemed Terminated and we will have no further obligation to advance funds under the Line; and (ii) on the date that is sixty (60) days after the Termination Notice Date, the then outstanding balance of the Line, plus all accrued and unpaid interest, and all other amounts due under this Agreement shall be due and payable. Termination under this section will not affect any checks which comply with this Agreement and which were written and issued by you before the Termination Notice Date or any other loans made under this Agreement before the Termination Notice Date. If we choose, at our sole option, to pay checks or make advances after we have Terminated this account, you agree that we may charge those loans to this account. After Termination, the checks and other credit access devices provided to you to access your account, if applicable, are our property and must be returned to us immediately.

**21. CONVERSION TO TERM LOAN.** At any time while the Line is outstanding, we may, with or without cause, provide written notice to you to cease the availability of advances under the Line and convert the outstanding indebtedness under the Line into an amortizing term loan (the "Conversion Notice"). Unless the Conversion Notice provides otherwise, (i) effective as of the date of the Conversion Notice (the "Conversion Notice Date"), we will have no further obligation to advance funds under the Line; and (ii) on the date that is sixty (60) days after the Conversion Notice Date, the then outstanding balance of the Line will be converted to an amortizing term loan. Conversion of your account to a term loan under this section will not affect any checks which comply with this Agreement and which were written and issued by you before the Conversion Notice Date or any other loans made under this Agreement before the Conversion Notice Date. If we exercise this right, and your account is not an SBA Express Loan, your Minimum Monthly Payment will continue to be computed pursuant to the "Minimum Monthly Payment" section of this Agreement.

If we exercise this right and your account is an SBA Express Loan, we will compute a new Minimum Monthly Payment with respect to the term loan and will advise you of such new monthly payment in the Conversion Notice. The new Minimum Monthly Payment following conversion shall be based upon an amortization period specified in the Conversion Notice (the "Amortization Period") and shall be in the amounts determined by us to be necessary to fully amortize the then outstanding principal balance so converted over the Amortization Period, plus interest. Interest shall continue to accrue at the effective interest rate Index and Margin. Without limiting the foregoing, the Amortization Period and new Minimum Monthly Payment shall be determined in accordance with the U.S. Small Business Administration's current policies and procedures for the Express Loan Program.

All of the provisions of this Agreement shall apply after your account has been converted to a term loan except to the extent inconsistent with this section.

**22. OUR LIABILITY.** We have no responsibility for failure of any machine, merchant or other party to honor checks or any other means which we may permit from time to time to be used to obtain a loan from this account. Our liability, if any, for wrongful dishonor of a check written on this account is limited to your actual damages. Dishonor for any reason as provided under the terms of this Agreement is not wrongful dishonor.

**23. POST-DATED, STALE DATED, STOP PAYMENT AND CERTIFICATION OF CHECKS.** Procedures and laws applicable to post-dated, stale dated, and stop payment of checks in connection with transactions on regular business checking accounts shall apply to checks under this Agreement. You agree not to issue post-dated checks. You may place a stop payment order on a check by providing us with information on the date, number, payee, and exact amount (dollars and cents) of the check at any branch office, or by calling or writing us at the following address: PNC Bank, Centralized Customer Assistance, 2730 Liberty Avenue, Pittsburgh, PA 15222. Stop payment orders are subjected to a Stop Payment Fee as disclosed in the "Other Charges" section of this Agreement. We will not be liable for paying a check if your request is incomplete, incorrect in any detail or is not provided to us in a time and manner which affords us a reasonable opportunity to act upon it. We will not "certify" a check on this account.

**24. AMENDMENT OF AGREEMENT.** We may amend this Agreement from time to time, in any respect, by giving you written notice where required by law. Such amendments will apply to outstanding balances and new loans except as otherwise indicated in the written notice. If you do not agree to be bound by the terms of any amendment, you must notify us of your election to Terminate the account pursuant to the "Termination by You" section of these Terms and Conditions within thirty (30) days after the date we sent you our notice of the amendment. We may modify this account without the consent of, or notice to, anyone other than the party with whom the modification is made.

**25. YOUR RESPONSIBILITIES TO US.** If more than one person is identified as Borrower, each and all of you are equally responsible, individually and together, to us for payment in full of this account. If we extend credit to you by posting any advance to your account prior to receiving written notice of your death or incapacity, such transaction shall be a valid and binding obligation of your estate and upon your heirs and personal representatives.

**26. REMEDIES CUMULATIVE.** Our remedies under this Agreement shall be cumulative and not alternative.

**27. DELAY IN ENFORCEMENT.** We can delay in enforcing any of our rights under this Agreement without losing them. Any waiver by us of any provision of this Agreement will not be a waiver of the same or any other provision on any other occasion.

**28. ASSIGNMENT.** You may not assign or otherwise transfer your rights and privileges under this Agreement, or delegate your obligations to repay amounts you owe us. Any attempt by you to assign or delegate will be void and of no effect. We may assign any and all of our rights under this Agreement at any time without your consent. A person(s) to whom we assign this Agreement shall be entitled to all of our rights under this Agreement. None of your rights or obligations shall be affected by such assignment.

**29. REPLACEMENT OF PRIOR AGREEMENTS.** This Agreement replaces all earlier agreements and governs all balances on this account, including balances carried over onto this account from any prior account, just as if it had been in effect before the first advance from this account.

**PNC BANK**

**BUSINESS BANKING**

**30. NOTICES.** All notices, demands, requests, consents, approvals and other communications required or permitted hereunder ("Notices") must be in writing and, except as otherwise provided in this Agreement, will be effective upon receipt. Notices may be given in any manner to which the parties may separately agree, including without limitation, electronic mail, first-class mail, facsimile transmission and commercial courier service, which methods are hereby agreed to as acceptable methods for giving Notices. In addition, the parties agree that Notices may be sent electronically to any electronic address provided by a party from time to time. Regardless of the manner in which provided, Notices may be sent to a party's address as set forth on the first page of these Terms and Conditions or to such other address as any party may give to the other for such purpose in accordance with this section. Any notice to us which is required by this Agreement must be sent to us at the address set forth on the first page of these Terms and Conditions.

**31. GOVERNING LAW AND CONSTRUCTION; JURISDICTION.** This Agreement has been delivered to and accepted by us and will be deemed to be made in the State of Delaware. Regardless of the State of your residence or the place to which the Borrower submitted an application, you agree that the provisions of this Agreement related to interest, charges and fees shall be governed by and construed in accordance with federal law and, as made applicable by federal law, Delaware law. Unless preempted by federal law, all other substantive terms and provisions also shall be governed by and construed in accordance with the laws of the State of Delaware, including without limitation the Electronic Transactions Act (or equivalent) in effect in the State of Delaware (or, to the extent controlling, the laws of the United States of America, including without limitation, the Electronic Signatures in Global and National Commerce Act), excluding its conflict of laws rules. You irrevocably consent to the exclusive jurisdiction of any state or federal court located in the State of Delaware, and consent that all service of process may be sent by nationally recognized overnight courier service directed to you at your address set forth on the first page of these Terms and Conditions and service so made will be deemed to be completed on the business day after deposit with such courier, provided that nothing contained in this Agreement will prevent us from bringing any action, enforcing any award or judgment or exercising any rights against you individually, against any security or against any of your property within any other county, state or other foreign or domestic jurisdiction. You acknowledge and agree that the venue provided in this paragraph is the most convenient forum for both you and us. You waive any objection to venue and any objection based on a more convenient forum in any action instituted under this Agreement. If your account is an SBA Express Loan, when the U.S. Small Business Administration ("SBA") is the holder, this Agreement will be interpreted and enforced under federal law and SBA regulations. The Bank or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Agreement, you may not claim or assert any local or state law against SBA to deny any obligation, defeat any claims of SBA, or preempt federal law. As to this Agreement, you may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

**32. ELECTRONIC SIGNATURES AND RECORDS.** Notwithstanding any other provision herein, you agree that the Agreement, any amendments thereto, and any other information, notice, signature card, agreement or authorization related thereto (each, a "Communication") may, at our option, be in the form of an electronic record. Any Communication may, at our option, be signed or executed using electronic signatures. For the avoidance of doubt, the authorization under this section may include, without limitation, use or acceptance by us of a manually signed paper Communication which has been converted into electronic form (such as scanned into PDF format) for transmission, delivery and/or retention.

**33. SEVERABILITY.** If any provision of this Agreement is held to be invalid or unenforceable, such determination shall not affect the validity or enforceability of the remaining provisions of this Agreement.

**34. GENERAL PROVISIONS.** To the fullest extent allowed by law, you and any other person who guarantees or is otherwise liable for this account waive any applicable statute of limitations, presentment, demand for payment, protest and notice of dishonor. Upon any change of this Agreement, and unless otherwise expressly stated in writing, no party obligated on this account, directly or as a guarantor, shall be released from liability. We may renew, extend or otherwise maintain (repeatedly and for any length of time) this account, or release any party or guarantor or collateral; or impair, fail to realize upon or perfect our security interest in any collateral; and take any other action deemed necessary by us without the consent of, or notice to, anyone. We may modify this account without the consent of, or notice to, anyone other than the party with whom the modification is made.